Estate of Isaac S. Miller, Goldie Miller, Conservator, et al. [1] v. Commissioner. Estate of Miller v. Commissioner
Docket Nos. 62021-62023.
United States Tax Court
T.C. Memo 1960-132; 1960 Tax Ct. Memo LEXIS 157; 19 T.C.M. (CCH) 683; T.C.M. (RIA) 60132; June 22, 1960
*157 Paul Levin, Esq., and Don S. Harnack, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax and additions to tax for fraud against the petitioners as follows: Addition to Tax
Docket No.
Year
Deficiency
Sec. 293(b)
62021
Estate of Isaac S. Miller
1946
$2,249.33
$1,124.67
1947
8,260.63
4,130.32
62022
All States Auto Body Builders, Inc.
1946
1,222.53
1,238.51
1947
4,407.08
3,986.47
1948
1,658.10
1,604.27
1949
1,207.43
1,167.71
62023
Estate of Isaac S. Miller and Goldie Miller
1948
2,348.44
1,174.22
1949
1,475.08
737.54
Although due notice was given, there was no appearance by or for the petitioners when their respective cases herein were called for trial, and no proposed findings of fact or briefs have been filed in their behalf. At the conclusion of the trial, respondent, by leave of the Court and in conformance with section 272(e) of the Internal Revenue Code of 1939, filed an amended answer in Estate of Isaac S. Miller, Docket No. 62021, alleging that he had erred in determining the tax and *158 addition to tax for the year 1947 in the respective amounts of $8,260.63 and $4,130.32, and that the correct deficiency in income tax and the addition to tax under section 293(b) for that year are in the respective amounts of $9,805.09 and $4,902.85. The respondent having the burden of proof on the fraud issues introduced evidence in support thereof. Findings of Fact Isaac S. Miller and Goldie Miller were husband and wife during the periods herein involved, and are still married. They are residents of Chicago, Illinois. On January 3, 1955, Isaac S. Miller was declared mentally incompetent by a United States District judge and on October 10, 1955, the Probate Court of Cook County, Illinois, appointed Goldie Miller as conservator of the estate of her husband, an incompetent. All States Auto Body Builders, Inc., hereafter referred to as All States, was an Illinois corporation during the taxable years 1946 through 1949. It was engaged in the business of building and repairing truck bodies in Chicago. Isaac S. Miller, hereafter referred to as Miller, owned 70 of the 71 outstanding shares of the common stock, the par value of which was $100 per share. Miller was the president and treasurer *159 of the company, and was in complete control of its operations. He handled all of the receipts and gave instructions as to matters entered in the books and records. Miller filed individual returns for the years 1946 and 1947 and with his wife filed joint returns for the years 1948 and 1949. On behalf of All States he filed corporation returns and amended returns for the years 1946 through 1949. All returns were filed with the collector of internal revenue for the first district of Illinois. Fanny Harper was an employee of All States from January 1942 until November 1954, and served as Miller's secretary. Joseph Zuckerman, an accountant, was employed by All States during the years 1946 through 1949 to keep and maintain its books and records. They were kept on an accrual method of accounting and consisted of cash receipts journals, check disbursements journals, sales journals and general ledgers. The individual and joint returns were also prepared by Zuckerman, but on a cash basis. Fanny usually prepared an invoice on the company's form for each sale made. She made one or two copies for the customers and retained a copy for the company, which was kept in the company's accounts *160 receivable file. Payments were received through the mail or directly from the customer. Checks generally came through the mail. Cash payments were sometimes received at the office directly from the customers. Ordinarily Miller was present and waiting for the mail when it arrived. It was Fanny's practice to open the mail, obtain invoices from the file that corresponded with the payments received, stamp them paid, and hand both the invoices and the payments to Miller. In his absence, she placed them on his desk. When Fanny received invoices and payments back from Miller, she would prepare deposit slips for the deposit of the returned payments in the company's bank account. The source of the deposits was usually shown by writing on the slips the names of the customers from whom the payments had been received. At the end of the month, Zuckerman picked up the invoices and deposit slips and recorded them in the company's books and records. Miller did not return all invoices and checks to Fanny and no record was made on the company's books of the invoices which were not returned. The company's returns were usually prepared from the records made by Zuckerman. For the years 1946 and 1947, *161 the returns were prepared for All States by Edward Gimbel and Mack J. Meyer, respectively, both representing the firm of Edward Gimbel & Company. For the years 1948 and 1949, All States' returns were prepared by Zuckerman. As president, Miller signed All States' returns for all years, but for 1947 his title of president was not shown. No other officer or person representing the corporation signed any of the returns. Special Agent John J. Creen of the Internal Revenue Service started an investigation of All States' income tax returns on May 30, 1950. He held a conference on June 29, 1950, with Miller and Zuckerman, and questioned Miller with respect to two paid invoices which did not appear on the company's books and had not been reported on the company's income tax returns. Miller expressed amazement that they were not on the returns, and stated that to the best of his recollection they were the only ones that could have been left off the returns; that at the time he was ill in a hospital; that the girl at the office had probably cashed the checks because of his need of money; and that he knew of no other sales that had not been recorded on the books. Zuckerman had learned of the *162 special agent's investigation through Miller's office. He made the company's records available to the agent. Having learned that the agent could not locate a certain item on the books, Zuckerman had called Miller, who first denied withholding any invoices from Zuckerman. Later he admitted that he had. Zuckerman insisted on having all withheld invoices, in order to file amended returns, and after making three or four trips to Zuckerman with withheld invoices, Miller stated, "I cannot find any more." From the withheld invoices so received by him, Zuckerman then prepared amended returns for the company for each of the years 1946 through 1949, to include the sales reflected by the withheld invoices but which had not been recorded. No change was made in the expenses or deductions shown on the original returns. Each of the amended returns was signed by Zuckerman, as the person who prepared it, and by Miller, as president. No other officer of the company or person representing it signed the returns. Zuckerman filed the amended returns and paid the additional tax shown to be due on July 7, 1950. On the same date, after calling the special agent and telling him he had some additional information *163 that would help in his investigation, Zuckerman delivered copies of the amended returns to the agent and also copies of the invoices on which the amended returns were based. At that time, Zuckerman was under the belief that there were no other missing invoices. He learned later that there were others. During the years 1946, 1947, 1948 and 1949, Fanny had observed that Miller was not returning to her some invoices and checks which she delivered to him. She spoke to him about it, and he stated that he was holding them temporarily, that he would pay back the money, and for her not to say anything about it. Miller kept the withheld invoices in various boxes, cabinets and an inner compartment of the company's vault, to which only he had a key. When Miller was called on to furnish Zuckerman with the withheld invoices, Fanny helped him locate a substantial number of them. On the original and amended returns filed by All States for the taxable years, gross sales were reported as follows: Gross Sales
Gross Sales
Original
Amended
Year
Returns
Returns
1946
$57,825.14
$ 63,509.48
1947
83,549.19
101,306.34
1948
65,662.30
72,539.80
1949
40,252.19
45,564.04
*164 All States' total sales and the amounts it failed to report on its original returns for the taxable years were as follows: Amount of Un-
Gross
reported
Year
Sales
Sales
1946
$ 65,906.27
$ 8,081.13
1947
111,095.91
27,546.72 [1]
1948
77,273.25
11,610.95
1949
49,250.49
8,998.30
The net income reported by All States and its additional net income which includes unreported sales, for the years 1946 through 1949, consisted of the following amounts: Additional
Net Income
Total
Net Income
Not Re-
Adjusted
Year
Reported
ported
Income
1946
$2,354.19
$10,999.69
$13,353.88
1947
(1,818.64)
31,012.85
29,194.21
1948
3,430.19
14,086.65
17,516.84
1949
312.84
10,561.55
10,874.39
Miller received and retained proceeds from All States' sales during the years 1946 through 1949, in the following amounts: Year
Amount [1]
1946
$ 6,271.43
1947
28,513.22
1948
11,124.90
1949
8,237.19
*165 The above proceeds, which were not recorded on the company's books and not reported on its returns, were not reported as income by Miller on his individual and joint returns for the respective tax years. During the taxable years herein Miller received no formal dividend distributions from All States. At the end of 1946 and after the inclusion of the unreported gross sales, the earnings of All States available for distribution as dividends amounted to $10,382.49. During that year Miller personally received $6,271.43 of All States' gross receipts for that year. The respondent in his determination of deficiency against Miller for that year determined that the amount withheld and received by Miller was $8,081.13. At the end of 1947, the earnings of All States available for distribution as dividends amounted *166 to $23,976.16. During 1947 Miller personally received $28,513.22 of All States' gross receipts for that year, which amount exceeded the earnings available for distribution as dividends by $4,537.06. At the end of 1948, the earnings of All States available for distribution as dividends were $9,074.17. During 1948 Miller personally received $11,124.90 of All States' gross receipts for that year, which amount exceeded the earnings available for distribution as dividends by $2,050.73. At the end of 1949, the earnings of All States available for distribution as dividends amounted to $6,089.60. During 1949 Miller personally received $8,237.19 of All States' gross receipts for that year, which amount exceeded the earnings available for distribution as dividends by $2,147.59. Miller's investment in All States' stock was $7,000, representing 70 shares at $100 per share. In 1949 the aggregate of the various amounts withheld by him during the taxable years from the gross receipts of All States, which were in excess of All States' earnings available for distribution as dividends, equaled the cost of his All States stock, and by the end of 1949 had exceeded such cost by $1,735.38. During *167 the years 1946, 1947, 1948 and 1949 Miller received salary from All States in the respective amounts of $3,120, $4,575, $5,200 and $5,200. He received gross rentals for each of the taxable years of $1,440, $1,590, $2,240 and $3,040, respectively. He had no other source of income other than his salary, the rental income and the receipts from All States' unrecorded gross sales. The individual returns of Miller for 1946 and 1947 and the joint returns of Miller and his wife for 1948 and 1949 were prepared by Zuckerman from information obtained from the books of All States. Miller told Zuckerman the only income he had was the salary he received from the company. In each of the taxable years involved herein, Miller deposited in his personal bank account at the Merchants National Bank in Chicago, the following aggregate amounts: Amounts De-
Year
posited
1946
$18,755.89
1947
33,930.33
1948
30,210.62
1949
20,882.73
Some part of the deficiency for each of the years 1946, 1947, 1948 and 1949 with respect to petitioner All States, for 1946 and 1947 with respect to petitioner Estate of Isaac S. Miller, and for 1948 and 1949 with respect to petitioners Estate of *168 Isaac S. Miller and Goldie Miller, is due to fraud with intent to evade tax. Opinion The facts show that the sales receipts of All States in 1946 which were personally withheld by Miller amounted to $6,271.43, instead of $8,081.13, as originally determined by the respondent. Accordingly, the respondent concedes that appropriate adjustments should be made for that difference in computing the deficiencies for that year against both All States and the Estate of Isaac S. Miller. For the year 1947, the facts show that All States at the end of the year had earnings of $23,976.16 available for distribution as dividends, which amount was in excess of the amount determined by the respondent as dividends received by Miller from All States in that year. And on that basis, the respondent, by affirmative answer, has requested an increase in the deficiency against the Estate of Isaac S. Miller for 1947. As to the years 1948 and 1949, the facts show that the earnings of All States available for distribution as dividends were less than the amounts determined therefor by the respondent in his determinations of deficiencies, and the respondent now concedes that such was the case and that adjustments *169 therefor should be made in the deficiencies. The facts further show that, by reason of the amounts withheld by Miller from All States' gross receipts in 1947, 1948 and 1949, he had received capital distributions of $8,735.38, which, by reason of the $2,147.59 so received in 1949, exceeded his capital investment in All States' stock by $1,735.38, which the respondent claims represented capital gain to Miller in 1949. There was no appearance by or on behalf of any of the petitioners, and no evidence was offered to carry their burden of proving error in the respondent's determinations. Allowing for the concessions now made by the respondent and as required by the facts herein, the respondent's determinations of deficiencies for the years 1946, 1948 and 1949 are sustained. On the affirmative matter pleaded by the respondent, he has the burden of proof both as to the increase in deficiency for 1947, and as to fraud for all of the years. With respect to increase in deficiency for 1947 against the Estate of Isaac S. Miller, the respondent has submitted clear and convincing proof, and his claim therefor is sustained. Similarly, the respondent has submitted clear and convincing *170 proof that the deficiency, or a part thereof, against each petitioner for each of the taxable years was due to fraud with intent to evade tax, and the additions to tax for fraud for all years, under section 293(b) of the Internal Revenue Code of 1939, are applicable. Decisions will be entered under Rule 50. Footnotes
1. The proceedings of the following petitioners are considered herewith: All States Auto Body Builders, Inc., Docket No. 62022, and Estate of Isaac S. Miller, Goldie Miller, Conservator, and Goldie Miller, Docket No. 62023.↩
1. The amount of $ 27,546.72 shown as unreported sales for 1947 is as determined by the respondent in his determination of deficiency and as requested by him in his proposed findings of fact, although there is indication from certain exhibits of record that the amount of unreported sales was $28,314.77, which would indicate that gross sales were $111,863.96. In as much, however, as the respondent has made no claim for an increased deficiency, the amount of unreported sales is stated above in the amount determined and requested by him. ↩
1. Miller reported his income on the cash receipts and disbursements basis, whereas All States kept its books and reported its income by an accrual method of accounting. As a result, there are variations by years between the amounts of All States' unreported sales due to Miller's withholding of receipts and the actual amounts so withheld by Miller in certain specific years.↩